UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHAEL P. PHILLIPS,
     Plaintiff,

     v.                                        CIVIL ACTION NO.
                                              18-12508-MBB

CITY OF METHUEN,
     Defendant.

**MEMORANDUM AND ORDER RE:
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(DOCKET ENTRY # 23)**

**September 30, 2021**

**BOWLER, U.S.M.J.**

Pending before this court is a motion for summary judgment filed by defendant City of Methuen ("defendant").  (Docket Entry # 23).  Plaintiff Michael P. Phillips ("plaintiff") opposes the motion.  (Docket Entry # 29).  After conducting a hearing, this court took the motion under advisement.

PROCEDURAL BACKGROUND

Plaintiff initiated this action after obtaining permission to sue from the Equal Employment Opportunities Commission, more than ninety days after filing a complaint with the Massachusetts Commission Against Discrimination.  (Docket Entry # 1, ¶¶ 54, 59).  The complaint alleges disability discrimination and failure to accommodate under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA") (Count I), and

Massachusetts General Laws, chapter 151B ("chapter 151B") (Count II).  (Docket Entry # 1).  Plaintiff claims that defendant discriminated against him by refusing to hire him as a reserve police officer because of his seizure disorder, despite being qualified for the job and able to perform its essential functions.  (Docket Entry # 1, ¶¶ 24-27, 33).  Defendant has filed an answer to the complaint (Docket Entry # 6), and both parties have consented to this court's jurisdiction pursuant to General Order 09-3 (Docket Entry # 14).

<u>STANDARD OF REVIEW</u>

Summary judgment is designed "'to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'"  <u>Tobin v. Federal Express Corp.</u>, 775 F.3d 448, 450 (1st Cir. Dec. 30, 2014) (quoting <u>Wynne v. Tufts Univ. Sch. of Med.</u>, 976 F.2d 791, 794 (1st Cir. 1992)).  It is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  It is inappropriate, in contrast, "if the record is sufficiently open-ended to permit a rational factfinder to resolve a material factual dispute in favor of either side."  <u>Pierce v. Cotuit Fire Dist.</u>, 741 F.3d 295, 301 (1st Cir. 2014).

"An issue is 'genuine' when a rational factfinder could

resolve it [in] either direction," and a "fact is 'material' when its (non)existence could change a case's outcome." Mu v. Omni Hotels Mgmt. Corp., 882 F.3d 1, 5 (1st Cir. 2018); accord Green Mountain Realty Corp. v. Leonard, 750 F.3d 30, 38 (1st Cir. 2014).  The court views the record in favor of the nonmoving party, i.e., plaintiff, and draws reasonable inferences in the nonmovant's favor.  See Garcia-Garcia v. Costco Wholesale Corp., 878 F.3d 411, 417 (1st Cir. 2017) ("The court must examine the 'record in the light most favorable to the nonmovant' and must make 'all reasonable inferences in that party's favor.'" (quoting Ameen v. Amphenol Printed Circuits, Inc., 777 F.3d 63, 68 (1st Cir. 2015))).  Courts ignore "'conclusory allegations, improbable inferences, and unsupported speculation.'"  Garcia-Garcia, 878 F.3d at 417 (quoting Taylor v. Am. Chemistry Council, 576 F.3d 16, 24 (1st Cir. 2009)).

When the nonmovant bears the burden of proof at trial, he "'must point to facts memorialized by materials of evidentiary quality and reasonable inferences therefrom to forestall the entry of summary judgment.'"  Geshke v. Crocs, Inc., 740 F.3d 74, 77 (1st Cir. 2014) (quoting Certain Interested Underwriters at Lloyd's, London v. Stolberg, 680 F.3d 61, 65 (1st Cir.2012)); see Woodward v. Emulex Corp., 714 F.3d 632, 637 (1st Cir. 2013) (noting that nonmovant must, for issues on which he bears burden of proof, "'demonstrate that a trier of fact reasonably could

find in his favor'" (quoting <u>Hodgens v. Gen. Dynamics Corp.</u>, 144
F.3d 151, 158 (1st Cir.1998))).  A court "'should exercise
particular caution before granting summary judgment for
employers on such issues as pretext, motive, and intent.'"
<u>Adamson v. Walgreens Co.</u>, 750 F.3d 73, 83 (1st Cir. 2014)
(quoting <u>Santiago–Ramos v. Centennial P.R. Wireless Corp.</u>, 217
F.3d 46, 54 (1st Cir.2000)).

Uncontroverted statements of fact in a L.R. 56.1 statement
of material facts comprise part of the summary judgment record.
<u>See</u> L.R. 56.1; <u>Cochran v. Quest Software, Inc.</u>, 328 F.3d 1, 12
(1st Cir. 2003) (admitting a date on summary judgment because
plaintiff failed to contest date in L.R. 56.1 statement);
<u>Stonkus v. City of Brockton Sch. Dep't</u>, 322 F.3d 97, 102 (1st
Cir. 2003) (citing L.R. 56.1 and admitting undisputed material
facts that plaintiff failed to controvert).  The parties in this
case have each filed a L.R. 56.1 statement of material facts.
(Docket Entry ## 25, 30).

FACTUAL BACKGROUND

Plaintiff has had three seizures, each precipitated by a
"severe lack of sleep," occurring on March 31, 2013, May 26,
2013, and March 7, 2015.  (Docket Entry # 30, ¶ 3) (Docket Entry
# 30-2).  In 2017, and again in 2020, plaintiff's primary care
physician and neurologist both cleared him to work full-time as
a police officer without restriction.  (Docket Entry # 30-1, ¶

4

36) (Docket Entry ## 30-3, 30-4, 30-5, 30-7).  As of 2017, and
despite his seizure history, he had "performed the position of
auxiliary police officer for several years and the duties of a
special police officer for one year" in the Lawrence Police
Department in Massachusetts.[1]  (Docket Entry # 30-1, ¶ 23-24).

The auxiliary police officer position is a volunteer
position with no powers of arrest other than a citizen's arrest.
(Docket Entry # 30-1, ¶ 25).  Plaintiff does, however, receive
police training and carries "firearms and all other tools full[-
]time officers carry."  (Docket Entry # 30-1, ¶¶ 25-26).  His
special police officer position is a paid position and involves
the use of a firearm and police cruiser.  (Docket Entry # 30-1,
¶¶ 28, 32).  While plaintiff admits that it is not a civil
service position, he contends that this is the only distinction
between a special police officer and a regular police officer,
and that their duties are otherwise the same.  (Docket Entry #
30-1, ¶¶ 28-31).  Plaintiff alleges that he has performed the
essential functions of his two police officer positions without
accommodation despite being "exposed countless times and on a
regular basis to extremely stressful situations."  (Docket Entry
# 30-1, ¶¶ 34-35).

---

[1]  Plaintiff claims that he has never had a seizure "in the years
[he has] worked the two police officer positions in Lawrence,"
suggesting he began both positions after his last seizure on
March 7, 2015.  See (Docket Entry # 30-1, ¶ 33).

Plaintiff first applied for a reserve police officer position with the Methuen Police Department in 2014 after defendant announced that it would appoint 25 new reserve police officers. (Docket Entry # 25, ¶ 1) (Docket Entry # 30, ¶ 6). The Methuen Police Department is a civil service department. (Docket Entry # 25, ¶ 2).[2] Defendant interviewed plaintiff for the position. (Docket Entry # 25, ¶ 3) (Docket Entry # 30, ¶ 6). Plaintiff believed that he was one of the most qualified candidates for the position. (Docket Entry # 30-1, ¶ 7). Nonetheless, on or about January 5, 2015, defendant informed plaintiff that he "was being bypassed in favor of other candidates." (Docket Entry # 25, ¶ 5) (Docket Entry # 30, ¶ 8). Plaintiff successfully appealed this decision to the Civil Service Commission, which "ordered that [defendant] notify [plaintiff] first of any new openings for a reserve police officer position." (Docket Entry # 25, ¶ 6); see (Docket Entry # 30, ¶ 9).

On February 28, 2017, defendant notified plaintiff of a new opening for a reserve police officer position. (Docket Entry # 25, ¶ 7) (Docket Entry # 30, ¶ 10). Plaintiff interviewed for

---

[2] Plaintiff did not controvert this fact in plaintiff's L.R. 56.1 statement, and so it is admitted. See L.R. 56.1; Cochran 328 F.3d at 12 (admitting a date on summary judgment because plaintiff failed to contest date in L.R. 56.1 statement of material facts).

the position and again believed that he "was the best candidate for the position." (Docket Entry # 30-1, ¶ 11). On June 12, 2017, however, defendant notified plaintiff that he was again being bypassed for the position. (Docket Entry # 25, ¶ 8) (Docket Entry # 30, ¶ 12). Plaintiff appealed this decision to the Civil Service Commission. (Docket Entry # 25, ¶ 9) (Docket Entry # 30, ¶ 13). The parties settled the matter with defendant conditionally offering plaintiff a reserve police officer position. (Docket Entry # 25, ¶ 10) (Docket Entry # 30, ¶ 14). By letter dated October 6, 2017, defendant issued the offer of employment to plaintiff and noted that it was conditioned on his passing a medical examination. (Docket Entry # 24-1, p. 2) (Docket Entry # 25, ¶ 11) (Docket Entry # 30, ¶ 15). Plaintiff accepted the conditional offer on October 12, 2017. (Docket Entry # 24-1, p. 6).

Plaintiff attended his pre-employment medical examination on October 17, 2017. (Docket Entry # 24-1, p. 10) (Docket Entry # 25, ¶ 13) (Docket Entry # 30, ¶ 15). Defendant claims that Dr. Michael Romanowsky performed plaintiff's examination. (Docket Entry # 25, ¶ 13).[3] Plaintiff, however, alleges that he never met Dr. Romanowsky and that an unknown female medical

---

[3] Defendant includes this contention in its statement of undisputed facts but does not cite to any evidence in the record to support it.

professional examined him.  (Docket Entry # 30-1, ¶¶ 17-18).  On October 17, 2017, plaintiff signed the "Medical Examination Form [of] Initial-Hire Medical Standards," authorizing the "collection and use of the information on [the] form."  (Docket Entry # 24-1, p. 8).  The form notified plaintiff that, if he failed his initial medical examination, he could "undergo a reexamination within 16 weeks of the date of" his initial examination.  (Docket Entry # 24-1, p. 8).

Plaintiff claims that, in connection with his medical examination, no one associated with defendant (including Dr. Romanowsky and the unknown female medical professional) asked him questions about: his medical history (aside from the date of his last seizure), "ability to perform the functions of a reserve police officer in Methuen," "ability to perform the functions of the two police officer positions" he held in Lawrence, or any restrictions he had in his Lawrence positions. (Docket Entry # 30-1, ¶¶ 19-21).  He also claims that no one associated with defendant "asked [plaintiff] for copies of [his] medical records or for permission to obtain opinions" from plaintiff's medical providers.  (Docket Entry # 30-1, ¶ 22).

On November 27, 2017, Dr. Romanowsky completed the "Medical Verification Section" of plaintiff's Medical Examination Form (the "Medical Verification Section").  (Docket Entry # 24-1, p. 10).  He reported that plaintiff failed the medical examination

– specifically the "Neurological" section – because plaintiff had a "Category A" condition.  (Docket Entry # 24-1, p. 10). The form provides that "[c]onditions classified under Category A in the Medical Standards preclude an examinee from work in the public safety position."  (Docket Entry # 24-1, p. 10).  Dr. Romanowsky made handwritten notes on the form that read: "seizure disorder, on meds, last seizure 3/7/2015, see Dr. Xue letter."  (Docket Entry # 24-1, p. 10).

On November 29, 2017, defendant notified plaintiff by letter that he had failed his initial hire medical examination. (Docket Entry # 25, ¶ 16) (Docket Entry # 30, ¶ 16).  The letter stated that his "failure is based upon the fact that [he has] a seizure disorder, [is] on medication, and suffered a seizure on March 7, 2015."  (Docket Entry # 24-1, p. 12).  The letter advised plaintiff that he had "the right to submit to a reexamination within sixteen weeks of the date of [his] failure of the initial medical examination and [that he] must make arrangements for the reexamination with [defendant]."  (Docket Entry # 24-1, p. 12).  It also advised that, if plaintiff chose to undergo a reexamination, "failure to pass the re-examination [would] result in the revocation of [his] appointment" as a reserve police officer.  (Docket Entry # 24-1, p. 12).

After receiving the letter, plaintiff spoke with Jill Stackelin, Confidential Secretary for defendant's Human

Resources Department.  (Docket Entry # 25, ¶ 18) (Docket Entry # 30, ¶ 40).  The parties disagree as to the character of the conversation.  Defendant, by way of an affidavit from Stackelin, alleges that plaintiff indicated to her that he understood why he failed the initial examination and would call to schedule his reexamination.  (Docket Entry # 24-1, pp. 14-15).  Stackelin states in her affidavit that she informed plaintiff that he had to retake the examination within the 16-week time frame and discussed taking the examination near the end of that period, "as it would bring [plaintiff] very close to the five-year time frame for being on seizure medication without any issues." (Docket Entry # 24-1, p. 14).  Plaintiff, in contrast, alleges that Stackelin told him that he could schedule a reexamination only if, by the date of the reexamination, he would have been "on controlled medications with no seizures for five years." (Docket Entry # 30-1, ¶ 38).  This would have been impossible in the 16-week timeframe.  (Docket Entry # 30-1, ¶ 39). Ultimately, plaintiff did not call Stackelin back to schedule a reexamination.  (Docket Entry # 25, ¶ 24) (Docket Entry # 30, ¶ 41).  On March 14, 2018, defendant informed plaintiff via letter that it revoked his appointment due to his failure to request a reexamination.  (Docket Entry # 24-1, p. 17).

Plaintiff maintains that defendant "never engaged in any interactive dialogue with [him] about [his] condition," his

"ability to perform the essential functions of the reserve police officer position, or any potential accommodations that would" allow him to perform said essential functions.  (Docket Entry # 30-1, ¶ 40).

## DISCUSSION

Defendant moves for summary judgment on both claims on the basis that plaintiff failed to demonstrate that he is a "qualified individual" under either the ADA or chapter 151B, and therefore his "claims fail as a matter of law."  (Docket Entry # 23).  Plaintiff opposes the motion, arguing that there is a material dispute of fact "as to whether [he] was, at the time of his application for the position with the City of Methuen, able to perform the essential functions job with our [sic] without a reasonable accommodation."  (Docket Entry # 29).

To successfully allege employment discrimination under the ADA, a plaintiff must "prove by a preponderance of the evidence that the [plaintiff] (1) is disabled within the meaning of the ADA, (2) is qualified to perform the job in question, and (3) had an adverse employment action taken against him or her based on that disability."  Melo v. City of Somerville, 953 F.3d 165, 168 (1st Cir. 2020) (citing Laurin v. Providence Hosp., 150 F.3d 52, 56 (1st Cir. 1998)).  An individual is "qualified" under the ADA if he is "'able to perform the "essential functions" of

[the] position'" regardless of a reasonable accommodation.  Id. (quoting Laurin, 150 F.3d at 56).

Similarly, a plaintiff alleging a chapter 151B claim must demonstrate that he "is 'handicapped' within the meaning of [chapter 151B]; that he is a 'qualified handicapped person' capable of performing the essential functions of his job either without accommodation or with a reasonable accommodation; and that he was subject to an adverse employment action because of his handicap."  Godfrey v. Globe Newspaper Co., 928 N.E.2d 327, 334 (Mass. 2010).  "A 'qualified handicapped person' is one who is 'capable of performing the essential functions of a particular job, or who would be capable of performing the essential functions of a particular job with a reasonable accommodation to his handicap.'"  Id. at 333 (quoting chapter 151B, section 1(16)).  The issue here is whether plaintiff is a qualified individual under the ADA and chapter 151B.  (Docket Entry # 24, p. 8) (Docket Entry # 31, pp. 7-8).

I.  Applicability of the Initial-Hire Medical Standards

The Massachusetts Human Resources Division has promulgated the Initial-Hire Medical Standards (the "Medical Standards"), which establish "medical standards for newly hired police officers in Massachusetts."[4]  Melo, 953 F.3d at 168.  Appointees

---

[4]  As discussed infra, the Medical Standards regularly undergo a thorough review process.  The Massachusetts Human Resources

to civil service police officer positions must undergo a medical examination and satisfy the Medical Standards before performing their duties.  Mass. Gen. Laws ch. 31, § 61A.  If an appointee fails his initial medical examination, he may "undergo a reexamination within 16 weeks of the date of failure . . . ."  Mass. Gen. Laws ch. 31, § 61A.  Failure to pass the reexamination results in rescission of the appointment.  Mass. Gen. Laws ch. 31, § 61A.

The Medical Standards "specify all medical conditions . . . that would preclude a candidate's ability to perform the essential functions of the jobs of fire fighter and police officer."  Carleton, 858 N.E.2d at 266 (quotation marks and citation omitted).  The Medical Standards include a list of disqualifying (Category A) and potentially disqualifying (Category B) medical conditions.  Category A conditions entirely "preclude an examinee from work in the public safety position." (Docket Entry # 24-1, p. 10).  Among Category A conditions are

---

Division collaborates with outside consultants and representatives from police and firefighter unions to update the Medical Standards so that they continue to reflect the essential functions of police and firefighter positions.  See Carleton v. Commonwealth, 858 N.E.2d 258, 266-68 (Mass. 2006) (recounting in detail the reviews and updates of the Medical Standards in 1995-97 and 2001-03).  Before the Medical Standards take effect, the Human Resources Division must also submit them for review to the state legislature, the Massachusetts General Court (the "Legislature").  Mass. Gen. Laws ch. 31, § 61A; Carleton, 858 N.E.2d at 265.

"all epilepsy syndromes to include psychomotor, focal, petit
mal, or grand mal seizures other than for those with all of the
following: (a) no seizure for 1 year off all anti-epileptic
medications *or 5 years on a constant dose of the same medication*
. . . ."  Commonwealth of Massachusetts Human Resources
Division, Initial-Hire Medical and Physical Ability Test
Standards And Physician's Guide 2020, p. 14 (emphasis added).

Here, plaintiff failed his medical examination because he
had a Category A neurological condition, as noted by Dr.
Romanowsky on the Medical Verification Section.  (Docket Entry #
24-1, p. 10).  Dr. Romanowsky noted on the form that plaintiff
has a "seizure disorder," is "on meds," and last had a seizure
on March 7, 2015 (approximately two years and eight months prior
to his dated signature of the form).  (Docket Entry # 24-1, p.
10).

Defendant argues that, because plaintiff has a Category A
condition, he is unable to perform the essential duties of the
reserve police officer position and therefore is neither a
"qualified individual" under the ADA nor a "qualified
handicapped person" under chapter 151B.  (Docket Entry # 24, pp.
8-9).  Relying on Melo v. City of Somerville, plaintiff argues
that the Initial-Hire Medical Standards do not apply to him
because he "was not an initial hire into a municipal police
officer position."  (Docket Entry # 31, p. 9).

14

Plaintiff analogizes his situation to the plaintiff in
Melo.  The plaintiff in Melo was an officer in the Somerville
Police Department for 19 years before the department forced him
to retire after discovering that he was essentially blind in one
eye.  Melo, 953 F.3d at 166.  The plaintiff lost nearly all
vision in his left eye as the result of an injury he suffered
five years after he began working as a police officer.  Id.  The
defendant relied on the Initial-Hire Medical Standards to show
that the plaintiff could not perform the essential duties of his
position because he had a Category A condition (the inability to
see 20/100 or better in one eye).  Id. at 168-69.

The First Circuit in Melo ruled that the Medical Standards
only applied to initial hires, not to retaining current
officers.  Id. at 169.  The court pointed out that the enabling
statute for the Medical Standards (Massachusetts General Laws,
chapter 31, section 61A) called on the Massachusetts Human
Resources Department to establish additional standards for
current officers.  Id.  Noting that "experienced officers are
much more likely to acquire specific jobs" rather than needing
to "be capable of assuming all entry-level positions," the court
held that the plaintiff's "failure to meet the [initial-hire]
vision standards may not be enough per se to disqualify him
after many years of service."  Id.  Because the plaintiff
successfully performed his job for 14 years following his vision

15

loss, and because the defendant did not test the vision of its
incumbent officers, the court found that a reasonable jury could
conclude that seeing at least 20/100 in each eye was not a
requirement of the plaintiff's job.  Id.

Plaintiff argues that his circumstances are similar to
those in Melo because he was already performing the duties of
two police officer roles in Lawrence when he underwent his
medical examination for the Methuen position.  (Docket Entry #
31, p. 9).  According to plaintiff, this experience qualifies
him as an incumbent officer, meaning he should not be held to
the same standards as an initial hire.  (Docket Entry # 31, p.
9) ("Incumbent officers are those with experience, which have
[sic] allowed the officer to acquire valuable knowledge,
outweighing any deficiency in meeting rigid guidelines.").  He
also argues that, just as the Melo plaintiff was able to perform
his job duties for 19 years post-injury, plaintiff has never had
any problem fulfilling the duties of his two Lawrence police
positions.  (Docket Entry # 31, p. 9).

Despite the similarities, there are important differences
between Melo and this case.  Melo underwent a fitness-for-duty
medical examination to determine his ability to continue
performing the same job that he had held for almost two decades.
Melo, 953 F.3d at 167.  Although the First Circuit held that the
Medical Standards did not apply to Melo in 2020, he was

16

presumably required to meet those standards when he first joined the Somerville Police Department in 1997. See Mass. Gen. Laws ch. 31, § 61A (establishing that no one appointed to a police position after November 1, 1966 may perform the duties of that position before passing a medical examination in accordance with the Medical Standards). By contrast, plaintiff underwent his medical examination in connection with starting a *new* job, albeit one that he claims was substantially similar to the jobs he already held. (Docket Entry 30-1, ¶¶ 15, 31). Because plaintiff's positions in Lawrence are not civil service positions, he was not required to meet the Medical Standards before beginning his employment there. (Docket Entry # 30-1, ¶¶ 28, 31).[5]

Plaintiff's position is much closer to that of the plaintiff in Carleton v. Commonwealth. See Carleton, 858 N.E.2d at 259. In Carleton, the plaintiff was "denied employment as a fire fighter by the city of Marlborough . . . due to his inability to pass a hearing test based on" the Medical Standards. Id. The plaintiff, who normally wore hearing aids, claimed that he could perform the essential functions of the

---

[5]  Plaintiff does not specify whether his auxiliary police officer position is a civil service position. Given that it is a "volunteer position" with "no powers of arrest," this court infers that it is not a civil service position. (Docket Entry # 30-1, ¶ 25).

firefighter position with the reasonable accommodation of his hearing aids, but the court credited the Legislature's determination (as reflected in the Medical Standards) that the hearing aids were not a reasonable accommodation. Id. at 271-72. Notably, the plaintiff served as a "call" firefighter for the city of Stow for a two-year period and was working in such position for a few months before attempting to join the Marlborough Fire Department. Id. at 261. Plaintiff underwent a "fire fighter I certification course" for his call firefighter position and was able to complete the course with hearing aids without issue. Id. The court noted that call firefighters "are not employed under the civil service system and apparently are not required to meet the division's medical standards." Id. at 261 n.9. Despite the plaintiff's success in his substantially similar, non-civil service position, the court found that the Medical Standards still applied and that the Medical Standards' judgment as to the essential functions of the firefighter position controlled. Id. at 271-72.

Lastly, the enabling statute itself is clear that the Medical Standards apply to plaintiff: "No person appointed to a permanent, temporary or intermittent, or reserve police or firefighter position . . . shall perform the duties of such position until he shall have undergone initial medical and physical fitness examinations and shall have met such initial

standards."  Mass. Gen. Laws ch. 31, § 61A.  Defendant appointed
plaintiff to a reserve police position.  (Docket Entry # 25, ¶
10) (Docket Entry # 30, 14).  Plaintiff, like the plaintiff in
Carleton and unlike the plaintiff in Melo, had never previously
undergone an examination under the Medical Standards or been
required to meet them.  The statute does not provide an
exception for individuals hired into a civil service position
with relevant non-civil service experience.  As such, the
Medical Standards apply to plaintiff.

II.  Whether the Opinions of Plaintiff's Physicians
     Create a Genuine Issue of Material Fact

     Plaintiff argues that "conflicting medical opinions on
[his] ability to perform the essential functions of a reserve
police officer position in Methuen" create a genuine issue of
material fact as to whether he was qualified for the position.
(Docket Entry # 31, p. 9).  He points to letters from his
primary care physician and neurologist that together suggest he
could perform the duties of the reserve officer position.  See
(Docket Entry ## 30-3, 30-4, 30-5, 30-7) (letters from primary
care physician, Dr. Patricia A. Sereno, and neurologist, Dr.
Lanny Y. Xue).[6]  As discussed above, defendant's examining
physician, Dr. Romanowsky, determined that plaintiff had a

---

[6]  Only Dr. Sereno's letters explicitly express an opinion that
plaintiff is able to work as a police officer.

Category A condition, which "preclude[s] an examinee from work in the public safety position." (Docket Entry # 24-1, p. 10).

Plaintiff again relies on Melo to support his assertion that such conflicting medical opinions create a genuine issue of material fact. (Docket Entry # 31, pp. 8-10). Because the Initial-Hire Medical Guidelines did not apply to Melo as an incumbent officer, the court then evaluated whether a jury could find that Melo could perform the putative essential function of pursuit driving. Melo, 953 F.3d at 171. The district court had relied on the unanimous decision of the review panel's three physicians that Melo was unable to perform his position's essential functions, but the First Circuit pointed out that the physicians had reached different conclusions as to *why* Melo could not perform these functions.[7] Id. Because the opinions disagreed over whether Melo's vision prevented him from engaging in pursuit driving, the First Circuit ruled that a jury could reasonably find that it did not. Id. at 171-72.

There are two significant differences between this case and Melo. First, as noted earlier, the Medical Standards apply to plaintiff. Second, the disagreement that plaintiff raises is

---

[7] Two of the physicians believed that Melo's monocular vision made him unfit, whereas the third did not and instead concluded that Melo's marijuana use made him unfit. Id. at 167. The third physician's conclusion "explicitly contradict[ed] one of the other panel doctors, who concluded that Melo's off-duty marijuana use was no bar to his employment." Id.

between his physicians and defendant's examining physician, not between multiple physicians responsible for determining his fitness as a reserve police officer.  As before, <u>Carleton</u> offers a much closer analogue to the instant case than <u>Melo</u>.   In <u>Carleton</u>, the defendant revoked the plaintiff's appointment as a permanent intermittent firefighter because he had failed his medical examination, which he underwent without his hearing aids in accordance with the Medical Standards.  <u>Carleton</u>, 858 N.E.2d at 264.  The plaintiff retained a physician and "hearing expert" who "concluded . . . that [the plaintiff] had the hearing ability necessary to 'perform the duties of a fire[]fighter with no difficulties.'"  <u>Id.</u> at 263.  Despite the hearing expert's opinion, the court credited the Legislature's judgment that the plaintiff could not perform the essential functions of the firefighter position with his hearing aids, affirming the lower court's granting of summary judgment to the defendants.[8]  <u>Id.</u> at 271-72.

Here too, as evidenced by the Medical Standards, the Legislature decided that seizure conditions rendered an individual incapable of safely performing the essential functions of police officer positions unless the individual had

---

[8]  The Legislature, by way of the Medical Standards, decided that firefighters required a certain level of hearing acuity and that the use of hearing aids was not a reasonable accommodation. <u>Carleton</u>, 858 N.E.2d at 271-72.

been seizure-free without medication for at least one year or seizure-free on a constant dose of medication for at least five years.  See Commonwealth of Massachusetts Human Resources Division, Initial-Hire Medical and Physical Ability Test Standards And Physician's Guide 2020, p. 14.  As of the date of his medical examination, plaintiff was on anti-seizure medication and his last seizure was less than three years prior. (Docket Entry # 24-1, p. 10) (Docket Entry # 30-5). Accordingly, by decision of the Legislature, plaintiff was unable to perform the essential functions of the reserve police officer position.  The fact that plaintiff's physician believes that he can perform those functions, contrary to the Medical Standards, does not exempt plaintiff from meeting the Medical Standards.  See Carleton, 858 N.E.2d at 271-72.  As such, the differing opinions of plaintiff's primary care physician and defendant's examining physician do not give rise to a genuine issue of material fact.

III.  Determination of Essential Functions Under the ADA

Plaintiff argues that, under the ADA, defendant does not have the sole authority to determine the essential functions of its reserve police officer position.  (Docket Entry # 31, pp. 10-11).  In support, he cites the proposition that "'evidence of whether a particular function is essential includes*, but is not limited to*,' an employer's determination of what is an essential

function of the job." Gillen v. Fallon Ambulance Serv., Inc.,
283 F.3d 11, 25 (1st Cir. 2002) (quoting 29 C.F.R. §
1630.2(n)(3)).  Written job descriptions are entitled to
consideration, but they are not always dispositive, "even in the
emergency worker context." Melo, 953 F.3d at 170.

However, plaintiff misconstrues the nature of the Medical
Standards.  First, it is not the employer (i.e., defendant) who
sets the standards, but rather the Human Resources Division,
subject to review by the Legislature.  Mass. Gen. Laws ch. 31, §
61A.  Second, and more importantly, the standards are less so a
simple description of essential functions and more so a set of
regulations that are legally enforced, "'rationally related to
the duties of [civil service] positions[,] and [] have the
purpose of minimizing health and safety risks to the public,
fellow workers and the police officers and firefighters
themselves.'" Carleton, 858 N.E.2d at 264 (emphasis omitted)
(quoting Mass. Gen. Laws ch. 31, § 61A).  Furthermore, the Human
Resources Division, after collaborating with outside consultants
and representatives from police and firefighter unions, updates
the Medical Standards to ensure that they accurately reflect the
essential functions of police and firefighter positions.  Id. at
266-68.  In short, the Medical Standards represent the
considered judgment of the Legislature and various civil service
personnel as to the "realities" of civil service positions, not

an employer's description "constructed out of whole cloth."  See
Gillen, 283 F.3d at 25.  The Medical Standards therefore do
establish the essential functions of a civil service position
under the ADA.

IV.  Sufficiency of Plaintiff's Medical Examination

    Plaintiff alleges that his medical examination was
insufficient to determine his ability to perform the essential
functions of the reserve police officer position.  (Docket Entry
# 31, pp. 12-14).  He raises three particular deficiencies: (1)
Dr. Romanowsky signed the Medical Verification Section without
actually examining him;[9] (2) Dr. Romanowsky did not consider Dr.
Sereno's letter opining that plaintiff "was fully capable of
performing the police officer position;" and (3) the examination
was nothing more than an impermissible categorical inquiry into
plaintiff's disability.  (Docket Entry # 31, pp. 12-14).

    Plaintiff discusses at length Pesce v. N.Y.C. Police Dep't,
159 F. Supp. 3d 448 (S.D.N.Y. 2016).[10]  (Docket Entry # 31, p.
11-12).  In Pesce, the plaintiff was disqualified from a police
officer position because of a seizure condition.  Pesce, 159 F.

---

[9]  The parties dispute whether or not Dr. Romanowsky performed
the examination.  For the purposes of this motion, this court
assumes that the nonmovant's contention that Dr. Romanowsky did
not perform the examination is correct. See Garcia-Garcia, 878
F.3d at 417.
[10]  While the Pesce opinion is not binding on this court, the
circumstances of the case are similar enough that this court has
considered it for the purposes of the instant case.

Supp. 3d at 451-52.  Two police department physicians, neither
of whom personally examined or met the plaintiff, disqualified
him.  Id. at 452.  The plaintiff's physician, in contrast,
opined that he could perform the position's essential functions
despite his condition.  Id. at 452-53.  Notably, there did not
appear to be applicable state-wide regulations (as there are in
Massachusetts) as to the medical fitness or qualification of a
candidate with a history of seizures.  Three police department
physician experts testified that a candidate on anticonvulsant
medication was medically unfit to be a police officer, but they
disagreed as to how long a candidate must be seizure-free to
become qualified.  Id.  The court found that there was a genuine
issue of material fact as to the plaintiff's qualification to be
a police officer because the defendants' evidence of
disqualification – the judgment of the three physicians – was
disputed by the plaintiff's physicians.  Id. at 457.  The
parties also disputed "a wide range of facts concerning [the
plaintiff's] condition and the likelihood that he will
experience a seizure in the future."  Id.

    As to plaintiff's first point, it is not clear that the
dispute in Pesce depended at all on the fact that the physicians
who disqualified the plaintiff did not personally examine him.
Plaintiff does not point to any authority prohibiting a medical
disqualification where the certifying physician did not

personally perform the appointee's examination.  On the contrary, the Medical Verification Section contemplates just such a situation: "[i]n cases where the medical examination has been performed by a nurse practitioner or physician's assistant, a doctor of medicine or osteopathy must sign this Medical Verification Section."  (Docket Entry # 24-1, p. 10).  As there is only one signature line on the form, along with a requirement that the signer circle either "MD" (doctor of medicine) or "DO" (doctor of osteopathy), there is a clear expectation that the person who signs the form may not be the same person who performed the examination.  (Docket Entry # 24-1, p. 10).  Plaintiff's medical examination was not deficient simply because someone other than Dr. Romanowsky conducted it.

Second, plaintiff points to Pesce to conclude that defendant's failure to consider Dr. Sereno's letter "creates a triable issue of material fact."  (Docket Entry # 31, p. 13).  This rehashes the previous argument about conflicting medical opinions creating a genuine dispute of material fact (Docket Entry # 31, p. 9), and so the previous analysis applies.

Third, plaintiff argues that his medical examination was insufficient under the ADA because it "was nothing more than questions into his seizure disorder."  (Docket Entry # 31, p. 14).  Under the ADA, a job applicant's employment may be conditioned on his passing of a medical examination, but the

employer may not rely on the resulting physician's opinion without "first pausing to assess the objective reasonableness of the physician's conclusions."  Gillen, 283 F.3d at 31. Plaintiff argues that a medical examination under the ADA must involve an inquiry as to whether the applicant can perform the position's essential functions, rather than simply confirm the applicant's disability.  (Docket Entry # 31, p. 14).  This argument, however, leaves no room for the possibility that certain disabilities are disqualifying per se.  If a medical examination reveals that an applicant for a police officer position is completely blind, the examining physician need not review the applicant's complete medical history or test the strength of his heart to determine that he could not perform the position's essential functions.

The Human Resources Division, with the Legislature's backing, compiled a list of Category A conditions that disqualify an applicant per se.  See (Docket Entry # 24-1, p. 10); Carleton, 858 N.E.2d at 265-68.  Plaintiff does not dispute that his seizure disorder was a Category A condition as of the date of his examination.  (Docket Entry # 30).  Dr. Xue's letter from November 15, 2017, which Dr. Romanowsky cited on the Medical Verification Section, was sufficient to establish that plaintiff had a history of seizures and that his last seizure occurred less than three years prior.  (Docket Entry # 24-1, p.

27

10) (Docket Entry # 30-5). The medical examination was therefore sufficiently individualized to determine that he had a condition that, according to the regulations in force, precluded him from performing the essential functions of the reserve police officer position. It was reasonable for Dr. Romanowsky to conclude that plaintiff has a Category A condition, and so defendant was entitled to rely on that conclusion. See Gillen, 283 F.3d at 31. Both Dr. Romanowsky and defendant were entitled – indeed, required – to rely on the Legislature's judgment that plaintiff's Category A condition disqualified him from being a reserve police officer. Mass. Gen. Laws ch. 31, § 61A. For the foregoing reasons, plaintiff fails to show that his medical examination was deficient or invalid.

V. Determination of "Qualified Individuals" and "Qualified Handicapped Persons" Under the ADA and Chapter 151B

To prove that defendant discriminated against him in violation of the ADA, plaintiff must establish that he was "qualified to perform the job in question," meaning that "'with or without reasonable accommodation []he was able to perform the "essential functions" of [the] position.'" Melo, 953 F.3d at 168 (quoting Laurin, 150 F.3d at 56). According to the Medical Standards – which, this court again emphasizes, are routinely updated by the Massachusetts Human Resources Division and reviewed by not only outside consultants and representatives

from police and firefighter unions but also the Legislature –
plaintiff could not "perform the 'essential functions'" of the
reserve police officer position.  See id.  He was therefore not
a qualified individual under the ADA.  See id.  Defendant is
thus entitled to judgment on the ADA discrimination claim.

Plaintiff is similarly unable to prove that he is a
"qualified handicapped person" as required by chapter 151B.  See
Godfrey, 928 N.E.2d at 334.  "A 'qualified handicapped person'
is one who is 'capable of performing the essential functions of
a particular job, or who would be capable of performing the
essential functions of a particular job with a reasonable
accommodation to his handicap.'"  Id. at 333 (quoting Mass. Gen.
Laws ch. 151B, § 1(16)).  Because plaintiff cannot perform the
essential functions of the reserve police officer position, he
is not a qualified handicapped person under chapter 151B.  See
id. at 334.  As such, defendant is also entitled to judgment on
the chapter 151B discrimination claim.

Plaintiff also alleges that defendant failed to provide him
with a reasonable accommodation in violation of the ADA and
chapter 151B.  (Docket Entry # 1).  The ADA generally prohibits
an employer from not providing a reasonable accommodation to a
qualified individual.  42 U.S.C. § 12112(b)(5)(A).  Chapter 151B
imposes an essentially identical obligation.  Mass. Gen. Laws
ch. 151B, § 4(16); see Miceli v. JetBlue Airways Corp., 914 F.3d

29

73, 81 (1st Cir. 2019) (noting that "the Supreme Judicial Court
(SJC) 'look[s] to the [f]ederal cases decided under the ADA as a
guide to the interpretation of [chapter] 151B'" (quoting <u>Russell
v. Cooley Dickinson Hosp., Inc.</u>, 772 N.E.2d 1054, 1061 n.5
(Mass. 2002))).  In both cases, however, an employer only has a
duty to accommodate an applicant if the applicant is capable of
performing the essential functions of the position with
reasonable accommodation.  <u>Calef v. Gillette Co.</u>, 322 F.3d 75,
86 n.8 (1st Cir. 2003) (holding that, if an applicant "cannot
perform an essential function of the job, then he is not a
qualified individual and there is no duty to accommodate").  As
previously noted, plaintiff is not a qualified individual, and
so defendant did not have a duty to offer him an accommodation.
<u>See</u> <u>id.</u>  Consequently, defendant is entitled to judgment on
plaintiff's failure to accommodate claims.

CONCLUSION

For the foregoing reasons, the motion for summary judgment
(Docket Entry # 23) is **ALLOWED.**


                              /s/ Marianne B. Bowler
                         **MARIANNE B. BOWLER**
                         United States Magistrate Judge

30